Robert K. Meyer, Attorney at Law. P.C.
Robert Meyer, OSB #086470
888 SW 5th Avenue, Suite 650
Portland, OR 97204
Voice: (503) 459-4010
Fax: (503) 274-1214
robert@robertmeyerlaw.com

Christina Stephenson, OSB #102287
Stephenson Law, LLC
1001 SW Fifth Ave., Suite 1100
Portland, OR 97204
Voice: (503) 220-1790
Fax: (503) 512-5022
christina@stephensonlawpdx.com

Of Attorneys for Plaintiff

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF OREGON

## PORTLAND DIVISION

| | |
|---|---|
| **COLLEEN STUDINARZ and RICHARD HOLMES**, <br><br><br> Plaintiffs, <br><br> v. <br><br><br> **CLATSOP BEHAVIORAL HEALTHCARE**, an Oregon non-profit corporation; **SUMUER WATKINS**, an individual; **NICK BENAS**, an individual; and **LOIS GILMORE**, an individual, <br><br> Defendants. | Case No. <br><br><br> COMPLAINT <br><br> (42 U.S.C. § 2000e *et seq.* and Oregon law) <br><br> **DEMAND FOR JURY TRIAL** |

The Plaintiffs allege:

## Jurisdictional Allegations

### 1.

This Court has jurisdiction over Plaintiff's federal claims pursuant to 28 U.S.C. § 1331. This Court also has supplemental jurisdiction over Plaintiff's state claims pursuant to 28 U.S.C. § 1367 as the state claims arise from the same nucleus of operative facts as the federal claims.

### 2.

Venue is proper within the District of Oregon, Portland Division, pursuant to 28 U.S.C. § 1391(b) because all or substantially all of Plaintiff's claims arose in this judicial district.

### 3.

Plaintiff filed timely claims with Oregon's Bureau of Labor and Industries ("BOLI") and the Equal Employment Opportunity Commission ("EEOC") raising the issues alleged herein and received a right to sue notice.

## Parties

### 4.

Plaintiff Colleen Studinarz ("Studinarz") is an individual at all material times residing in the State of Oregon.  Plaintiff Richard Holmes ("Holmes") is an individual at all material times residing in the State of Oregon.

### 5.

Defendant Clatsop Behavioral Healthcare ("CBH") is a domestic non-profit corporation, organized in the State of Oregon, with its principal place of business in Warrenton, Oregon, and at all times material doing business in Oregon.  Defendant, Sumuer Watkins ("Watkins"), is an individual at all material times residing in the state of Oregon. Defendant, Nick Benas ("Benas"), is an individual at all material times residing in the state of Oregon.  Defendant, Lois Gilmore ("Gilmore"), is an individual at all material times residing in the state of Oregon.   At all material

times, Defendant CBH employed at least 50 individuals within a 75-mile radius of Plaintiff's workplace and employed at least 25 employees in the state of Oregon.

6.

At all material times, Defendants CBH, Watkins, and Benas were all "employers" within the meaning of ORS 659A.001(4)(a) as each, directly or through an agent, engaged or used the personal service of one or more employees in Oregon, reserving the right to control the means by which such services is or will be performed.

7.

At all times material, Defendant CBH was each Plaintiff's employer and each Plaintiff was Defendant CBH's employee.  At all material times, each Plaintiff was supervised by Defendant CBH's employees or agents and each Plaintiff relied on the actual or apparent authority of Defendant CBH's employees, supervisors and management.

## STATEMENT OF FACTS
### Holmes

8.

In October 2012, Plaintiff Holmes was hired by CBH.

9.

Holmes had different positions throughout his tenure and was most recently a Case Manager in the "Open Door" program.  This position provides services to high-risk, chronically mentally-ill clients who are in and out of hospitals and jails.

10.

In or around December 2014, Colleen Studinarz was hired as Program Manager for CBH and became Holmes's supervisor.

11.

In or around December of 2014, a new Case Manager, Susan, was hired to work in the "Open Door" program with Holmes.

Page 3 -      **COMPLAINT**

12.

Immediately upon Susan's hire, she demonstrated to CBH's staff that she had extremely poor personal and professional boundaries.  Susan would frequently make inappropriate jokes and comments, causing staff to become very uncomfortable.

13.

In March 2015, Holmes was staffing a complicated case with the entire Open Door team. The case involved a severely mentally-ill, young client who also was dealing with transgender issues.  During the middle of the meeting, Susan interrupted and said to Holmes, "You know your client thinks you're a fucking faggot and hates you."  Holmes was shocked.  Susan's comment was especially hurtful because Susan knew that Holmes is gay.

14.

From January to April 2015, Susan's inappropriate comments became amplified.  Susan regularly talked about her sex life with her husband to CBH staff, once telling Holmes and co-worker that she was going to go home and put some chocolate pudding on her nipples for her husband to lick off.  Despite the fact that Holmes was clearly uncomfortable with these type of revelations, Susan regularly told inappropriate jokes about sex and talked about various attractive men who she wanted to "fuck."  Susan even told Holmes that he was attractive, which made him feel even more uncomfortable.

15.

Holmes also noticed how Susan often touched people, asking for and giving hugs to coworkers and clients.  The practice of touching and hugging clients was particularly worrisome, as their unit served very volatile clients and this practice was discouraged for safety and professional efficacy reasons.  Susan would often laugh at herself when she asked for a hug or say something inappropriate and announce, "I'm so inappropriate!"

Page 4 -    **COMPLAINT**

16.

In or around April of 2015, Holmes came into CBH's breakroom and heard Susan talking to a co-worker, describing someone as a, "fucking homo." Holmes was horrified and learned shortly thereafter from other co-workers that Susan continued to use the words "homo" and "faggot" routinely.

17.

In April 2015, Holmes met with his supervisor, Studinarz and officially complained. Studinarz took Holmes's concerns seriously and shared that she had been trying to address Susan's behavior even before his official complaint. Holmes learned that in response to counseling from Studinarz, Susan accused Holmes of "recruiting" one of his clients to be gay. Holmes was astounded by this outrageous accusation that evidenced such prejudicial and ignorant views about homosexuality. Holmes, of course, denied the frivolous accusation and provided ample examples of how he maintained appropriate client boundaries, unlike Susan.

18.

On or around April 8, 2015, Holmes reported to Lois Gilmore, CBH's Human Resources Manager, that Susan's frequent homophobic remarks and inappropriate conduct was creating a hostile work environment. CBH, though, failed to address Holmes's concerns.

19.

Holmes learned shortly thereafter that Susan's preposterous statements about him were being "investigated" along with his complaints against Susan. Within a few days, Holmes was told that both Susan's "complaint" against Holmes and Holmes's complaint were going to be dismissed and categorized as "hearsay." Holmes was dumbfounded because there were several witnesses, including Studinarz, who would have independently verified Susan's homophobic comments about Holmes.

20.

Holmes tried to get assurance that Susan's behavior would be corrected but he was simply told that CBH would not take corrective action against Susan because Susan's family was

Page 5 -         **COMPLAINT**

known in the community and since she "comes from a good family."  Therefore, CBH forced Holmes to endure further discrimination by Susan.

21.

Horrified, and worried that Susan would seek to further tarnish his stellar reputation, Holmes sought to transfer out of the unit where Susan worked.  Holmes had seen other gay men whose lives were destroyed by false claims and rumors, and, knowing Susan's stature in the community, he knew he needed to get away from her.  Holmes applied for a lateral position to transfer to another unit.  Although Holmes was well-qualified, and the supervisor of that unit expressed that they would love to have Holmes there, Holmes's transfer request was denied by CBH.

22.

On or around April 22, 2015, Holmes wrote to Director of Operations, Nick Benas, and Gilmore.  Holmes told them essentially that since CBH would not make him safe from Susan, he thought he needed to resign.  Rather than assuring Holmes that they would remedy the hostile work environment, within 15 minutes of sending the email, Holmes was given a separation check from Gilmore.  Holmes was shocked, but left without incident.

## STATEMENT OF FACTS
### Studinarz

23.

In or around April 2015, Holmes reported to Studinarz that he was being harassed by a co-worker, Susan, regarding his sexual orientation.  The harassment included but was not limited to, Susan calling him a "faggot" "homo" and making sexually explicit statements.

24.

Studinarz reported the discrimination to the Director of Operations, Nick Benas, Human Resources Manager, Lois Gilmore, and CEO, Sumuer Watkins.  Studinarz requested that the company complete an investigation.  Studinarz was informed that there was no policy in place regarding these type of issues.

25.

On or around April 17, 2015, Studinarz was informed by Ms. Gilmore that no investigation would take place as the allegations against Susan were hearsay.  Studinarz reported to Ms. Gilmore that the allegations were not hearsay as there were witnesses to the harassment and Susan admitted in a written statement that she had called Holmes a "faggot."

26.

On or around April 17, 2015, Studinarz requested to discipline Susan and explained that Susan also had other performance issues.  However. Ms. Gilmore stated that Studinarz could only "work with her" and Studinarz was only allowed to create a work plan for Susan, at the most.  Ms. Gilmore stated that Susan was a "local girl" and that she came from a "good family." Further, Ms. Gilmore stated that she had gone to school with Susan.  Susan's harassment of Holmes was continuing, and Studinarz made it apparent to CBH that she opposed CBH's refusal to take corrective action.

27.

In addition to Susan's unlawful discrimination, Studinarz reported to CBH that Susan's substandard client-care was a safety issue for the clients served by CBH.

28.

On or around April 21, 2015, Studinarz sent an e-mail to Mr. Benas and Ms. Gilmore informing them that Susan's behavior continued to be unacceptable.  Complainant stated that she would be following through with completing a written warning for Susan regarding her substandard client care and unlawful discrimination.

Page 7 -        **COMPLAINT**

29.

On or around April 22, 2015, Holmes resigned and Management quickly accepted his resignation.

30.

After learning of Holmes' resignation, Complainant reported to CBH her belief that Holmes' resignation was due to the hostile work environment created by CBH's refusal to take proper corrective action with Susan.  Further, Complainant again reported that Holmes had recently informed her that the harassment was continuing due to his sexual orientation, and that he felt like he was being targeted by CBH management.  Studinarz requested that CBH conduct a formal investigation before accepting his resignation.

31.

On or around April 22, 2015, an hour after accepting Holmes' resignation, Studinarz was terminated.  Studinarz asked whether CBH had seen her email regarding Holmes' resignation and Mr. Benas replied that he had.  Studinarz was told that she was terminated due to not being an "organizational fit."  Studinarz asked for clarification and was informed that she exhibited "resistance to communication."  Studinarz denies these allegations and believes these excuses were used as a pretext for terminating her.  Studinarz had never received any disciplinary actions from CBH.  In addition, Studinarz had been told that she was doing a great job.

**<u>First Claim For Relief</u>**
**Title VII Discrimination, 42 U.S.C. § 2000e–2**
**(Plaintiff Holmes)**
**(Against All Defendants)**

32.

Plaintiff re-alleges and incorporates by reference the facts and allegations set forth in the prior paragraphs of this complaint.

33.

42 U.S.C. § 2000e–2(a) provides:

Page 8 -    **COMPLAINT**

It shall be an unlawful employment practice for an employer: to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin.

34.

Defendants engaged in unlawful employment practices, because Defendants discriminated against, refused to transfer, and ultimately discharged/ constructively discharged Plaintiff from employment because of Plaintiff's sex/ sexual orientation.  Defendant would not have treated Plaintiff as described above had it not been because of Plaintiff's sex and Defendant's stereotypes related to the acceptable gender roles.

35.

As a result of a violation of 42 U.S.C. § 2000e–2, an employee is entitled to: (1) compensatory damages, such as lost wages and employment benefits, covering past and future losses with appropriate interest, as well as damages for pain, suffering, and emotional distress, 42 U.S.C. §§1981a, 2000e-5(g)(1); (2) punitive damages, 42 U.S.C. § 1981a; and (3) costs and attorney fees, 42 U.S.C. § 2000e-5(k).

36.

As a result of Defendants' unlawful conduct, Plaintiff has incurred and continues to incur lost wages and benefits in an amount to be proven at trial. Plaintiff will continue to have lost income and benefits into the future.

37.

As a direct and proximate result of Defendants' conduct, Plaintiff has suffered and will continue to suffer mental stress, humiliation, inconvenience and loss of enjoyment of life all to Plaintiff's non-pecuniary loss, in an amount to be determined at trial.

38.

Defendants' conduct was willful, malicious and/or done with reckless indifference to Plaintiff's federally protected rights. Defendant should be assessed punitive damages in an

amount to be determined at trial.

39.

As a result of Defendants' unlawful actions, Plaintiff seeks the full extent of damages Plaintiff is entitled to by law.

//

//

//


**Second Claim For Relief**
**Title VII Retaliation, 42 U.S.C. § 2000e–2**
**(Plaintiffs Holmes and Studinarz)**
**(Against All Defendants)**

40.

Plaintiff re-alleges and incorporates by reference the facts and allegations set forth in the prior paragraphs of this complaint.

41.

42 U.S.C. § 2000e–3(a) provides:

It shall be an unlawful employment practice for an employer to discriminate against any of his employees or applicants for employment, for an employment agency, or joint labor-management committee controlling apprenticeship or other training or retraining, including on-the-job training programs, to discriminate against any individual, or for a labor organization to discriminate against any member thereof or applicant for membership, because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter.

42.

Defendants engaged in unlawful employment practices, because Defendants discriminated

against and ultimately discharged Plaintiffs from employment because Plaintiffs reported and/or opposed a practice made unlawful by 42 U.S.C. § 2000e, *et seq.* Each Plaintiff complained about illegal sex/ sexual orientation discrimination as set forth above and Defendants discrimination against, refused to transfer, terminated, and/ or constructively discharged Plaintiffs for such opposition.

43.

As a result of a violation of 42 U.S.C. § 2000e–2, an employee is entitled to: (1) compensatory damages, such as lost wages and employment benefits, covering past and future losses with appropriate interest, as well as damages for pain, suffering, and emotional distress, 42 U.S.C. §§1981a, 2000e-5(g)(1); (2) punitive damages, 42 U.S.C. § 1981a; and (3) costs and attorney fees, 42 U.S.C. § 2000e-5(k).

44.

As a result of Defendants' unlawful conduct, Plaintiffs each have incurred and continue to incur lost wages and benefits in an amount to be proven at trial. Plaintiffs will continue to have lost income and benefits into the future.

45.

As a direct and proximate result of Defendants' conduct, Plaintiffs have each suffered and will continue to suffer mental stress, humiliation, inconvenience and loss of enjoyment of life all to each Plaintiff's non-pecuniary loss, in an amount to be determined at trial.

46.

Defendants' conduct was willful, malicious and/or done with reckless indifference to Plaintiffs' federally protected rights. Defendant should be assessed punitive damages in an amount to be determined at trial.

47.

As a result of Defendants' unlawful actions, Plaintiffs seek the full extent of damages Plaintiff is entitled to by law.

**Third Claim For Relief**
**Whistleblower Retaliation – ORS 659A.199**
**(Plaintiffs Holmes and Studinarz)**
**(Against All Defendants)**

48.

Plaintiff re-alleges and incorporates by reference the facts and allegations set forth in the prior paragraphs of this complaint.

49.

Defendants discriminated and retaliated against Plaintiff Holmes, including subjecting Holmes to a hostile work environment, refusing to transfer, and/or terminating/constructively terminating his employment, for reporting in good faith what Plaintiff Holmes believed to be illegal discrimination.

50.

Defendants discriminated and retaliated against Plaintiff Studinarz, including terminating her employment, for reporting in good faith what Plaintiff Studinarz believed to be illegal discrimination.

51.

Defendants' discrimination and retaliation constitutes an unlawful employment practice in violation of ORS 659A.199.

52.

As a direct and proximate result of Defendants' conduct, each Plaintiff has suffered and will continue to suffer mental stress, emotional distress, humiliation, inconvenience and loss of enjoyment of life all to each Plaintiff's non-pecuniary loss in an amount to be determined at trial.

53.

As a direct and proximate result of Defendants' conduct, each Plaintiff suffered economic loss in a sum to be proven at trial.

54.

Defendants' conduct was wanton and willful.  Defendant should therefore be assessed punitive damages in an amount to be determined at trial.

55.

Pursuant to ORS 659A.885 and ORS 20.107, Plaintiff is entitled to recover reasonable attorneys' fees, expert fees, costs and disbursements.

**<u>Fourth Claim For Relief</u>**
**Sexual Orientation Discrimination/Harassment - ORS 659A.030(a) and (b)**
**(Plaintiff Holmes)**
**(Against All Defendants)**

56.

Plaintiff re-alleges and incorporates by reference the facts and allegations set forth in the prior paragraphs of this complaint.

57.

Defendants treated Plaintiff adversely with respect to compensation or other terms, conditions, or privileges of employment.  Plaintiff's sexual orientation was a substantial factor in the adverse treatment.

58.

In perpetrating the actions described in the above paragraphs, Defendants violated ORS 659A.030(a) and (b) by subjecting Plaintiff to discrimination and harassment on the basis of Plaintiff's sex/sexual orientation, causing Plaintiff to suffer damages.

59.

Plaintiff requests an award of damages, equitable relief, costs, and attorney's fees as alleged in paragraphs 52-55, supra.

Page 13 -    **COMPLAINT**

**Fifth Claim For Relief**
**Discrimination Based on Association - ORS 659A.030(a) and (b)**
**(Plaintiff Studinarz)**
**(Against All Defendants)**

60.

Plaintiff re-alleges and incorporates by reference the facts and allegations set forth in the prior paragraphs of this complaint.

61.

Defendants treated Plaintiff adversely with respect to compensation or other terms, conditions, or privileges of employment.  Plaintiff's association with a gay person, Holmes, was a substantial factor in the adverse treatment.

62.

In perpetrating the actions described in the above paragraphs, Defendants violated ORS 659A.030(a) and (b) by subjecting Plaintiff to discrimination and harassment on the basis of Plaintiff's association with Holmes, causing Plaintiff to suffer damages.

63.

Plaintiff requests an award of damages, equitable relief, costs, and attorney's fees as alleged in paragraphs 52-55, supra.

**Sixth Claim for Relief**
**Retaliation ORS 659A.030(f)**
**(Plaintiffs Holmes and Studinarz)**
**(Against all Defendants)**

64.

Plaintiff re-alleges and incorporates by reference the facts and allegations set forth in the

prior paragraphs of this complaint.

65.

Defendants treated Plaintiff Holmes adversely with respect to the terms, conditions, or privileges of employment including failing to conduct a proper investigation into his complaints, refusing to transfer and constructively terminating Plaintiff. Defendants and their agents/employees subjected Plaintiff to this retaliation based on his opposing and/or reporting unlawful practices including, but not limited to retaliation and discrimination because of his complaints of unlawful discrimination. Plaintiff's reports and/or opposition to unlawful practices was a substantial factor in Defendants' adverse treatment of him.

66.

Defendants treated Plaintiff Studinarz adversely with respect to the terms, conditions, or privileges of employment including terminating Plaintiff. Defendants and their agents/employees subjected Plaintiff to this retaliation based on her opposing unlawful practices including, but not limited to retaliation and discrimination because of her complaints of unlawful discrimination. Plaintiff's opposition of unlawful practices was a substantial factor in Defendants' adverse treatment of her.

67.

In perpetrating the actions described in the above paragraphs, Defendant violated ORS 659A.030(f) by subjecting Plaintiff to retaliation, causing Plaintiff to suffer damages.

Page 15 -    **COMPLAINT**

68.

Plaintiffs request an award of damages, equitable relief, costs, and attorney's fees as alleged in paragraphs 52-55, supra.

**Seventh Claim For Relief**
**Retaliation – ORS 654.062**
**(Plaintiff Studinarz)**
**(Against all Defendants)**

69.

Plaintiff re-alleges and incorporates by reference the facts and allegations set forth in the prior paragraphs of this complaint.

70.

Oregon law prohibits discriminating against an employee because the employee reported or opposed in good faith conduct she reasonably believes created an unsafe or unhealthy workplace environment.  *See e.g.* ORS 654.010 (mandating that Oregon employers provide a safe and healthful work environment) and ORS 654.022 (mandating that Oregon employers obey and comply with Oregon health and safety regulations).

71.

In perpetrating the actions described in the above paragraphs, Defendants, acting through their agents and/or employees, discriminated against Plaintiff in the terms and conditions of her employment including terminating Plaintiff in retaliation for Plaintiff's acts of opposing and reporting information Plaintiff believed violated Oregon health and safety regulations as set forth is ORS Chapter 654 and OAR 839-004-0001 et seq.

72.

By retaliating against Plaintiff in this manner, Defendants violated ORS 654.062 and

OAR 839-004-0001 et seq., causing Plaintiff to suffer damages.

73.

As a result of Defendant's unlawful conduct, Plaintiff suffered loss in back pay in an

amount to be determined at trial.

74.

Pursuant to ORS 20.107, Plaintiff is entitled to recover reasonable attorneys' fees, expert

fees, costs and disbursements.

**Eighth Claim For Relief**
**Wrongful Discharge in Violation of Public Policy: Whistleblowing**
**(Plaintiffs Holmes and Studinarz)**
**(Against Defendant CBH)**

75.

Plaintiff re-alleges and incorporates by reference the facts and allegations set forth in the

prior paragraphs of this complaint.

76.

At all materials times, the public policy of Oregon prohibited an employer from

retaliating against an employee for making complaints of discrimination and/or for reporting

information the employee believed was evidence of a violation of a state or federal law, rule, or

regulation.

77.

This public policy is embodied in the common law, statutes, and regulations of the State of Oregon and the United States including, but not limited to ORS 659A.030, ORS 659A.199, OAR 839-005-0000 et seq., and OAR 839-010-0000 et seq.

78.

Defendant, acting through its agents and/or employees, violated the above public policies by discriminating and retaliating against each Plaintiff for opposing and/or making good faith complaints about unlawful conduct.

79.

Defendant's discharge of each Plaintiff was taken in retaliation for Plaintiff's pursuit and exercise of each Plaintiff's rights, which are of important public interest.

80.

Plaintiff requests an award of damages, equitable relief, costs, and attorney's fees as alleged in paragraphs 52-55 supra.

**<u>Ninth Claim For Relief</u>**
**Aiding and Abetting Discrimination/Harassment ORS 659A.030**
**(Plaintiffs Holmes and Studinarz)**
**(Against Defendants Watkins, Benas, and Gilmore)**

81.

Plaintiff re-alleges and incorporates by reference the facts and allegations set forth in the prior paragraphs of this complaint.

82.

Defendant Watkins violated ORS 659A.030(1)(g) by aiding, abetting, inciting,

compelling and/or coercing discrimination and retaliation of Plaintiff, as set forth above.

Defendant Benas violated ORS 659A.030(1)(g) by aiding, abetting, inciting, compelling and/or

coercing discrimination and retaliation of Plaintiff, as set forth above.  Defendant Gilmore

violated ORS 659A.030(1)(g) by aiding, abetting, inciting, compelling and/or coercing

discrimination and retaliation of Plaintiff, as set forth above.

83.

As a direct and proximate result of Defendant's unlawful conduct, each Plaintiff has

suffered damages.

84

Plaintiff requests an award of damages, equitable relief, costs, and attorney's fees as

alleged in paragraphs 52-55, supra.

**<u>JURY TRIAL DEMAND</u>**

Each Plaintiff demands a jury trial on all claims and issues to the extent allowed under

the law.

**WHEREFORE,** each Plaintiff requests the following judgments and relief according to proof:

1.      Economic damages;

2.      Non-economic damages;

3.      Liquidated damages in an amount equal to twice Plaintiff's unpaid wages;

4.      Reasonable costs and attorney's fees per statute;

5.    Equitable relief including a permanent injunction enjoining Defendants from engaging in any employment practice which discriminates on the bases as alleged in this Complaint;

6.    For prejudgment and post-judgment interest as appropriate and allowed by law;

7.    On all claims, as applicable, amounts necessary to offset the income tax consequences of receiving a lump sum payment, rather than receiving payment of wages over the applicable time frame;

8.    Punitive damages; and

9.    All such other relief as this Court may deem proper.


Respectfully Submitted,

DATED this 8th day of April, 2016.


/s/Christina Stephenson
Christina Stephenson, OSB #102287
Stephenson Law, LLC
christina@stephensonlawpdx.com
Robert K. Meyer, OSB No. 086470
Robert K. Meyer, Attorney at Law, P.C.
robert@robertmeyerlaw.com
Of Attorneys for Plaintiff

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

Page 1 -    CERTIFICATE OF SERVICE